## Case No. 17,563a.

### WHITEHEAD v. The TEMPEST.

[22 Betts, D. C. MS. 71.]

District Court, S. D. New York. 1855.

ACCIDENT TO TOW—LIABILITY OF TUG.

[A tug engaged to tow a schooner from one anchorage in New York harbor to another is not responsible for the safe transportation of the schooner over sunken rocks, provided she exercise ordinary care and skill in directing the movements of the two vessels.]

BETTS, District Judge. The owner of the schooner Eclipse files this libel to recover damages to the schooner by her striking on a rock in the East river nearly opposite the foot of Tenth street. The allegation of the libel is that the master of the schooner hired the steamboat, being a regular tow boat, engaged in the business of towing vessels for hire, and the master of the steamboat agreed to tow the schooner safely and securely from her anchorage in the North river to a berth at Eighteenth street, on the East river, and in so doing he

used so little, or such bad, care, skill, and management that, whilst being towed, the schooner, without fault on her part, was by the fault, negligence, and improper or unskilful conduct and management and navigation of the steamboat, drawn, driven, or caused to strike a reef of rocks, and was thereby greatly injured and damaged. The answer avers that the steamer was a regular tow boat, engaged in the business of towing vessels for hire in the bay and harbor of New York, and at the time complained of was hired by the master of the schooner to tow her, as charged in the libel; but denies that any agreement was made to tow her safely and securely, or that the steamboat took the schooner in possession otherwise than fastening to her as a tow, and avers that the schooner remained in possession and under control of her own officers and crew whilst so in tow. The answer further denies that it was agreed on the part of the steamboat to pilot the schooner on such towage. It was proved that the tow boat was hired to tow the schooner round for $10, and fastened alongside of her. The master and crew of the schooner remained on board that vessel, and managed her helm, under direction of the master of the tug. The master of the schooner swears he gave the draught of his vessel to the master of the tug. The latter denies that fact, but says he afterwards heard from another person that the schooner drew twelve feet of water. The tug passed a sunken reef of rocks without touching, but the schooner rubbed in passing over, and had her keel torn off. At about the same instant, two of the large Sound boats were near these vessels, passing up in the same direction on the opposite side of the river, and in their movement they created a swell and fall of the surface of the water of about two feet. The master of the tug testifies but for that casualty the schooner would have gone clear of the reef. The master testifies that the perturbation of the water from their movement had not reached the schooner at the time of the accident.

The tug, under this mode of hiring and employment, did not become responsible for the safe transportation of the schooner over the rocks. Her undertaking charged her with no more than the exercise of ordinary care and skill in directing the movements of the two vessels. She did not become subject to the liabilities of a common carrier, and it is doubtful if it was even a bailee for hire. Wells v. Steamboat Nav. Co., 2 Comst. [2 N. Y.] 208; The Princeton [Case No. 11,434].

The question then is plainly whether ordinary skill and diligence were used by the master and crew. This undoubtedly may depend upon the nature of the difficulty encountered. There is more reason for holding her responsible for not avoiding an object in open view (The Express [Case No. 4,598]) than a hidden one, as a rock under water (3 Hill, 1). But, even as to the first, a mistake of judgment in approximating the danger, or adopting the method for avoiding it, does not render the tug answerable for the consequences. The Princeton [supra].

I do not think the testimony shows any want of ordinary care in the tug in carrying the schooner over the reef under circumstances where the master had reasonable ground to believe both his boat and the schooner could go safely. The evidence is not very satisfactory that the swell occasioned by the passing of the two large steamers had any injurious effect upon the depth of water, but it is not found by the libellant that the ordinary depth at that time of tide was not such as to afford a probably safe passage for the schooner. The evidence is in counterpoise whether the master of the schooner gave her draught of water to the master of the tug, and the libellant cannot take advantage of that particular as an affirmative fact tending to prove negligence.

On the whole case I am of opinion that the libellant has not proved the accident happened to the schooner through the want of ordinary care and skill on the part of the tug. Had the schooner been a ship of large draught, the presumption might be different. Libel dismissed.